**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TERRY MOORE, LEGAL
REPRESENTATIVE OF THE ESTATE OF
LESLIE C. MOORE,

        **Plaintiff,**

-vs-                                                              Case No.  **6:06-cv-689-Orl-UAM**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

## MEMORANDUM OF DECISION

Plaintiff Terry Moore, legal representative of the estate of Leslie C. Moore, ["Plaintiff"]

appeals to the district court from a final decision of the Commissioner of Social Security [the

"Commissioner"] denying Leslie C. Moore's application for disability benefits. *See* Doc. Nos. 1, 22.

The Court has considered the record and the briefs filed by the parties and finds that oral argument is

unnecessary.  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

Plaintiff's request for oral argument (*see* doc. no. 16 at 1) is denied as moot.

**I.**      **PROCEDURAL HISTORY**

On November 25, 2002, Leslie C. Moore ["Moore"] filed a claim for disability insurance

benefits and supplemental security income benefits, claiming disability as of October 15, 1999 due

to pain, weakness, diabetes, chronic diarrhea, and liver, kidney, and pancreas damage. R. 50-52, 58,

404-05.  Moore's disability insured status expired on September 30, 2003.  R. 48.  His claim for

benefits was denied initially and upon reconsideration.  On January 26, 2005, the Honorable Robert

D. Macinkowski, Administrative Law Judge ["ALJ"], held a hearing on Moore's claim in Ocala, Florida.  R. 417-60.  At the hearing, Moore amended his alleged onset date from October 15, 1999 to May 1, 2001.  R. 429-30.  Attorney Albert Bacharach represented Moore at the hearing.  R. 417.  The ALJ heard testimony from Moore and Dr. William Summit, an impartial vocational expert ["VE"].  R. 418.

On June 3, 2005, the ALJ issued a decision that Moore was not disabled and not entitled to benefits.  R. 16-22.  Following a review of the medical and other record evidence, the ALJ found that Moore retained the residual functional capacity ["RFC"] to stand, walk, and sit six hours in an eight-hour workday and lift twenty pounds.  R. 22, Finding 6.  The ALJ also found that Moore had occasional limitations with overhead reaching of his upper extremities and that Moore needed to avoid unprotected heights and moving machinery.  *Id.*  After hearing testimony by the VE, the ALJ found that Moore could perform his past relevant work as a packer.  R. 21, 22, Finding 7.  The ALJ therefore concluded that Moore was not disabled.  R. 22, Finding 9.

After considering an additional medical record dated November 2, 2004, the Appeals Council denied review.  R. 5, 8.  On May 19, 2006, Moore timely appealed the Appeals Council's decision to the United States District Court.  Doc. No. 1.  On October 2, 2006, Moore filed in this Court a memorandum of law in support of his appeal.  Doc. No. 16.  On December 1, 2006, the Commissioner filed a memorandum in support of his decision that Moore was not disabled.  Doc. No. 17.

On February 25, 2007, Moore passed away and is survived by Terry Moore, his brother and legal representative of his estate.  On May 14, 2007, the Court allowed "Terry Moore, legal representative of the estate of Leslie C. Moore" to substitute as Plaintiff as to the claim for disability

insurance benefits only and not Moore's claim for supplemental security income benefits.  *See* Doc.

No. 22.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that substantial evidence does not support the Commissioner's decision.

Plaintiff claims to assign this one error to the Commissioner, but also points to three specific errors

by the Commissioner.[1]  First, he claims that the ALJ erred by finding that Moore could perform his

"past relevant work" as a packer, in particular, because his packer work was temporary.  Doc. No. 16

at 15.  Second, Plaintiff claims that the ALJ failed to articulate explicit and adequate reasons for

rejecting Moore's treating physician's opinions regarding Moore's diabetes.  *Id.* at 16.  Third, Plaintiff

claims that the ALJ erred by improperly rejecting Moore's subjective complaints of pain.  *Id.* at 17-22.

The Commissioner argues that substantial evidence supports his decision to deny disability.

The Commissioner further responds that Plaintiff waived his arguments regarding the Commissioner's

errors; that any errors by the ALJ were harmless; and that the ALJ correctly evaluated the evidence

and applied the proper legal standards.  Doc. No. 17 at 6-12.

## III.    THE STANDARD OF REVIEW

### A.    AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

U.S.C. § 405(g.  Substantial evidence is more than a scintilla — i.e., the evidence must do more than

---

[1]Plaintiff's memorandum in support of the appeal is confusing.  At the beginning of his memorandum, he states that the issue on appeal is "WHETHER THE ALJ SUBSTANTIAL EVIDENCE (SIC) DOES NOT (SIC) SUPPORT THE ADMINISTRATIVE LAW JUDGE'S FINDING THAT MOORE IS ABLE TO PERFORM SUBSTANTIAL GAINFUL ACTIVITY."  Doc. No. 16 at 1.  In the "Argument" section of his memorandum, Plaintiff raised several specific issues, but did not provide substantive argument or citations to relevant authority supporting his positions for each of the issues raised.  The Court therefore addresses below only what the Court was able to discern as Plaintiff's main arguments, and, in fact, gave Plaintiff's counsel the benefit of the doubt by delineating three.

merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991. The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied.

## B.    REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four.  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894

F.2d 1520, 1529 (11th Cir. 1990.  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984.  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985.

### C.   REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996.  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled.

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ

to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment. On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation. After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g. To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994.

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a

-6-

sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[2] *Id.*

## IV.   APPLICATION AND ANALYSIS

### A.   THE FACTS

Moore was born on July 16, 1943 and was sixty-one years old on the date of the ALJ's decision to deny benefits. R. 17, 50. He had a high school education and past work experience as a construction worker, carpenter, and packer. R. 59, 64, 120. He claimed disability as of May 1, 2001 due to diabetes, pain, limited use of limbs, problems with his liver, kidney, and pancreas, and chronic diarrhea. R. 58, 429-30.[3] Moore reported earnings through 1999, and his disability insured status expired on September 30, 2003.[4] R. 48. Around 2004, Moore began working four hours a day for the Land Housing Authority, picking up trash from the ground. R. 425-26.

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

[3]Moore originally claimed disability due to depression and mental impairments as well, but at the hearing, Moore's counsel amended the claim to include physical impairments *only* and agreed that Moore's depression was directly related to Moore's alcohol consumption. *See* R. 230.

[4]The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

Moore had a history of alcohol addiction.  He developed chronic pancreatitis at age forty related to his alcoholism, and underwent surgery for a pancreatic pseudocyst in 1983.  R. 274.  Moore also developed Type II Diabetes.  *Id.*

Moore received treatment for alcoholism and problems associated with his alcohol abuse, including chronic diarrhea related to his earlier pancreas surgery, at the Halifax Medical Center between 1988 and 1993.  R. 197-240A.  In December 1993, Moore was admitted to the Halifax Medical Center emergency room after being hit with a car while walking.  R. 143.  Moore was "severely intoxicated."  R. 179.  Moore sustained multiple traumas, including numerous fractures in both legs and his right shoulder.  R. 143-44, 146.  Moore was hospitalized for over one month, during which he underwent multiple surgeries.  R. 147-77.  He was discharged on February 3, 1994 to a nursing home.  R. 145.  The doctors advised Moore to continue physical therapy, take pain medication, and follow up with various doctors for physical and psychiatric treatment.  *Id.*  The discharge diagnosis was multiple fractures.  R. 143.

Between 1995 and  January 1989, Moore received treatment at Halifax Medical Center for alcohol abuse and diabetes.  R.  121-240A.  The doctors prescribed medication for his diabetes.  *Id.*  Moore underwent detoxification and periodically sought treatment for his alcohol addiction, but he continued to relapse.  *Id.*

On December 26, 2001, Moore was admitted to the Shands Health Care emergency room for detoxification.  R. 241-52.  Moore stated that he had been drinking for two weeks and that he was experiencing tremors.  R. 246.  Moore was diagnosed with alcoholism and transferred for detoxification.  *Id.*

Moore received treatment for depression, alcoholism and diabetes from John Abernethy, M.D., between February 2001 and April 2002.  R. 262-73.  According to Dr. Abernethy's notes, dated February 6, 2001, Moore complained of pain in his left arm and some numbness in the fingers in his left hand.  R. 268.  The doctor diagnosed alcoholism, diabetes mellitus, acid reflux, chronic pancreatitis, chronic sinusitis, and chronic diarrhea.  *Id.*  During his treatment of Moore, Dr. Abernethy prescribed Wellbutrin for depression, Librium for anxiety and alcohol withdrawal, and Diebeta for diabetes.  R. 267.

On December 30, 2002, Moore went to the Family Medical and Dental Center with complaints of depression, diabetes, and chronic diarrhea.  R. 256-61.  The doctor assessed anxiety and depression, diabetes mellitus with peripheral neuropathy, "Chronic Diarrhea x 15 years [status post] removal of pseudocyst," and chronic pancreatitis, also status-post removal of the pseudocyst.  R. 256.  Moore visited the Family Medical and Dental Center approximately four times through May 2003, mainly to receive refills of his medication.  R. 253-61.

On January 27, 2003, Robert A. Greenberg, M.D., saw Moore for a consultative examination.  R. 274-79.  Moore told Dr. Greenberg that he had not had any alcohol in fifteen years.  R. 274.  He also complained of constant and severe pain in both of his legs and right shoulder since his hospitalization in 1994.  *Id.*  On examination, Moore's vision was normal; he had some decreased range of motion of his right shoulder and full range of motion of all his other joints and spine; he had no atrophy of any muscle groups; no motor sensory or reflex abnormalities; and his grip strength and fine manipulation were normal.  R. 275-76.  Moore's gait and station were normal as well, and he did not require any assistance in walking.  *Id.*  Dr. Greenberg noted no complications due to diabetes, and

observed that Moore's mental status appeared to be normal. *Id.* The doctor's impression was a history of previous alcoholism, resulting in pancreatitis, non-insulin dependent diabetes "with symptoms suggesting the possibility of early, peripheral neuropathy," chronic depression, and probable osteoarthritis of the right shoulder and lower legs. *Id.* Dr. Greenberg opined that "[b]ased on these medical findings, . . . [Moore] should be able to perform most work-related activities that do not require strenuous exertion." *Id.*

X-rays of Moore's right shoulder were taken on January 27, 2003 at the Diagnostic Imaging Center. R. 277-79. The x-rays showed degenerative changes, and the doctor's impression was "Post-Traumatic Deformity with Abnormal Positional Healing, Post [motor vehicle accident]." *Id.*

On February 6, 2003, Reuben E. Brigety, M.D., a non-examining state agency physician completed a Residual Functional Capacity Assessment for Moore. R. 280-87. Dr. Brigety opined that Moore could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and sit approximately six hours in an eight-hour workday; and push and pull without limitation. R. 281. Moore further had no postural, manipulative, visual, or environmental limitations. R. 282-84.

On August 5, 2003, Nicholas H. Bancks, M.D., another non-examining state agency physician, completed a Residual Functional Capacity Assessment. R. 316-23. Dr. Bancks also opined that Moore could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and sit approximately six hours in an eight-hour workday; and push and pull without limitation. R. 317. Moore had no postural, visual, or communicative limitations. R. 318-20. He could reach overhead with his right arm only one-third of the time, and he had to avoid concentrated exposure to

hazards such as machinery and heights.  R. 319-20.  As mentioned above, Moore's disability insured

status expired on September 30, 2003.  R. 48.

Between 2003 and June 2004, Moore continued to visit the Family Medical and Dental Centers

periodically, mostly to receive refills of his diabetes medication and treatment for depression and

anxiety.  R. 364-68.  On January 27, 2004, Moore complained of complained of low back pain that

radiated to his legs, which he experienced after "working out in [a] garden."  R. 365.  The doctor

assessed: (1) lumbar strain; (2) Type II diabetes with peripheral neuropathy; (3) anxiety and

depression; and (4) osteoarthritis.  *Id.*  The doctor also prescribed medication.  *Id.*

In early June 2004, Moore voluntarily admitted himself to Meridian Behavioral Healthcare

("Meridian").  R. 338-44.  He was in a wheelchair, and he stated that he was depressed and that he had

been drinking continuously.  R. 344.  He also stated that he had applied for social security disability

and that "this is possibly one reason why he is getting himself admitted."  *Id.*  The "Initial Psychiatric

Evaluation" indicates a diagnosis of substance-induced mood disorder and alcohol abuse and

dependence on Axis I; non-insulin dependent diabetes and paralysis of both legs on Axis III;

"Substance abuse, alcohol abuse and consequences and medical problems and no finances, applied

for disability" on Axis IV, and a "Current GAF [of] 35."[5]  R. 343.  The prognosis was "[g]uarded."

---

[5]The DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (American Psychiatric Association 4th Ed. 1994) ["DSM-IV"] describes the five axes included in "the DSM-IV multiaxial classification" as:

Axis I    Clinical Disorders; Other Conditions That May Be a Focus of Clinical Attention
Axis II   Personality Disorders
Axis III  General Medical Conditions
Axis IV   Psychosocial and Environmental Problems
Axis V    Global Assessment of Functioning.

The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. DSM-IV at 32. A GAF code of 31 to 40 indicates some impairment in reality testing or communication (e.g.,speech

*Id.* Moore stayed at Meridian, under observation and receiving insulin, until June 17, 2004. R. 338-

42. On discharge, the physician diagnosed substance-induced mood disorder and alcohol abuse on

Axis I; diabetes mellitus, pancreatitis, and arthritis on Axis III. R. 342. The prognosis was

"[g]uarded" and the assessment of pain was "[s]ometimes." *Id.* Moore was instructed to take

medication and follow-up with his medical doctor for medical issues. R. 341.

From June to December 2004, Plaintiff received treatment for diabetes and related neuropathy

with the Volusia County Health Department clinic. R. 374-86. He was prescribed medication. *Id.*

The December 2004 notes from the clinic indicate that Moore's "[n]europathy improved on

[treatment] . . ." R. 374.

Moore underwent neurological testing at the Central Florida Neurologic Consultants, P.A. on

November 2, 2004. R. 415-16. The tests revealed "evidence of bilateral peroneal neuropathy in the

lower extremities, bilateral median neuropathy at the wrist, left greater than right, bilateral ulnar

neuropathy at the wrist and elbow." R. 416.

On January 26, 2005, Dr. Greenberg completed a Residual Functional Capacity Evaluation.

R. 400-03. Dr. Greenberg opined that Moore could: (1) sit for three to four hours at one time; (2) sit

a total of seven to eight hours per day if he were able to take a five-minute stretch break each hour;

(3) stand for one to two hours at one time ; (4) stand a total of four to five hours  per day if permitted

to take a five-minute break each hour to sit or walk around; and (5) work for seven to eight hours a

day if he were able to alternate between sitting and standing at will. R. 400-01. Dr. Greenberg also

---

is at times, illogical, obscure, or irrelevant), or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friend, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home and is failing in school). *Id.*

opined that Moore could lift one to five pounds frequently and five to nine pounds occasionally due to the decreased range of motion in Moore's right shoulder and the pain in his right leg.  R. 402.

### B.    THE ANALYSIS

#### 1.    Moore's Past Relevant Work

On appeal, Plaintiff makes two brief and conclusory arguments regarding Moore's past relevant work.  Plaintiff argues that the ALJ erred by finding that Moore could return to his past relevant work as a packer: (1) because Moore's job as a packer was only temporary work that lasted several months, and (2) because Moore's "clear and significant pain" would preclude him from performing this work.  Doc. No. 16 at 15.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Plaintiff's first argument is meritless.  For the hearing, the VE prepared a "Past Relevant Work Summary" that listed the "packer" job as Moore's past relevant work.  R. 120.  The exhibit was admitted into evidence without objection by Moore's counsel (R. 420-21), and thus, this argument is waived.  Furthermore, even assuming that the objection was not waived, the VE testified that a hypothetical individual with Moore's background and RFC would be able to perform both the packer job *and* Moore's past relevant work as a construction superintendent.  R. 454-55.  The Commissioner is therefore correct that any error regarding this issue would be harmless error.

Next, substantial evidence supports the ALJ's decision to deny benefits, even considering Moore's complaints of pain.  The record does not indicate that Moore received any *significant* treatment for pain.  Further, Moore's account of his activities of daily living and his part-time work for the Land Housing Authority, picking up trash from the ground, simply do not support the allegations of disabling pain.  Moore was diagnosed with diabetic neuropathy and osteoarthritis and complained of pain, but the ALJ properly accounted for Moore's pain in the RFC finding and the hypothetical question posed to the VE.  Remand is not necessary on this issue.

### 2.    Medical Source Opinions

Plaintiff also argues that the ALJ erred by failing to "articulate explicit [and] adequate reasons for rejecting a treating physician's opinion regarding the claimant's diagnosis and opinions concerning the claimant's diabetes and functional limitations . . ."  Doc. No. 16 at 16 (citing a district court decision from the Southern District of Alabama).  The Commissioner responds that the ALJ properly weighed all the medical evidence in the record.

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician.  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the

-14-

ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).

The argument by Plaintiff's counsel is confusing, and it is not clear to which treating physician opinion Plaintiff's counsel is referring. *See id.* at 16-17. Plaintiff's counsel cited a March 14, 2003 note from Family Medical and Dental Centers (which indicates that Moore had high level blood sugars daily and that he was diagnosed with diabetes mellitus and depression), but failed to explain how the ALJ erred or even how the ALJ rejected this diagnosis. *See id.* at 17. The record indicates that Moore was diagnosed with diabetes, even while he was still substantially employed; that Moore was treated conservatively with medication; and that Moore mainly experienced problems when he relapsed and began drinking again. The record does show that Moore had pain and diabetes-related neuropathy, but, again, the ALJ properly accounted for Moore's limitations in the RFC finding, by limiting Moore to lifting twenty pounds and only occasionally reaching overhead with his upper extremities and by imposing environmental restrictions. *See* R. 21. Further, the December 2004 notes from the Volusia County Health clinic indicates that Moore's neuropathy had improved on treatment. R. 374. No treating physician opined as to Moore's work limitations or RFC, and the ALJ stated specific and adequate reasons for rejecting the RFC assessment of Dr. Greenberg, a consultative examiner, not a treating doctor. Remand is unnecessary.

### 3.    Moore's Pain Testimony and Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to apply the correct standard in rejecting Moore's pain testimony and improperly rejected Moore's subjective complaints. Doc. No. 16 at 20-22. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine

the extent to which the symptoms can reasonably be accepted as consistent with the objective medical

evidence.   20 C.F.R. § 404.1529.   In determining whether the medical signs and laboratory findings

show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ

must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from that condition or (3) that the objectively determined medical condition is of such
> a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   Where an

ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and

adequate reasons for doing so, or the record must be obvious as to the credibility finding.   *Foote,* 67

F.3d at 1561-62*; Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991)

(articulated reasons must be based on substantial evidence).

In this case, the ALJ completed a thorough summary of the record evidence; properly weighed

the evidence, including the opinions of the various doctors; discussed Moore's activities of daily living

and testimony; and concluded that: "[Moore] does have impairments that limit his activities such as

heavy lifting. However, the clinical findings resulting from these impairments do not appear to be of

a degree capable of producing pain or limitations of incapacitating proportions."   R. 18-20.   The ALJ

noted that Moore's neuropathy appeared to have improved, and that his lifestyle was "fully functional"

based on his self-described activities of daily living.   *See id.*   The ALJ did not cite to the Eleventh

Circuit pain standard, but he clearly followed it.   The ALJ also stated specific and adequate reasons

for finding Moore not fully credible.   This reviewing court will not disturb the ALJ's clearly

-16-

articulated credibility finding that is supported substantial evidence record. *See Hale v. Bowman,* 831

F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

V.      **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.  The Clerk

should enter a judgment and close the case.

**DONE AND ORDERED** this 13th day of August, 2007.

*Donald P. Dietrich*

DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia       30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL             33602

The Honorable Robert D. Macinkowski
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817